IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THOMAS GREENHILL, individually and on behalf of others similarly situated as Plaintiff/Class Representative,<br><br>Plaintiffs,<br><br>vs.<br><br>RV WORLD, LLC d/b/a CAMPING WORLD OF MARION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 3:23-cv-02437-DWD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Thomas Greenhill, individually and on behalf of all others similarly situated, brings this putative class action against RV World, LLC d/b/a Camping World of Marion, alleging violations of federal and state wage laws, breach of contract, and unjust enrichment. Now before the Court is Defendant's Motion to Dismiss Complaint, or in the Alternative, to Compel Arbitration and Stay Proceedings (Doc. 23) and Memorandum in Support (Doc. 24). Plaintiff filed a Response in Opposition (Doc. 35), to which Defendant replied (Doc. 37). Having considered the briefing and arguments of the parties, the Motion will be **GRANTED IN PART**.

### Background

As alleged in the Complaint, Defendant is an Illinois company that employed Plaintiff as an RV tech from December 2021 to June 2022. (Doc. 1, ¶¶ 13, 17, 28). Plaintiff

claims that he worked between forty and fifty hours per week at an hourly rate of $18 to $20. (*Id.* at ¶¶ 18, 19, 21). Plaintiff further alleges that Defendant did not regularly pay him for all the hours he worked or overtime wages. (*Id.* at ¶¶ 25, 26). According to the Complaint, this was because Defendant required Plaintiff to be on the premises and available to work for forty to fifty hours per week regardless of whether he had work to do, yet Defendant only paid Plaintiff a flat rate based on specific tasks he completed. (*Id.* at ¶¶ 23, 24).

The Complaint alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), the Illinois Minimum Wage Law 820 ILCS § 105/1 et seq. ("IMWL"), and the Illinois Wage Payment and Collection Act 820 ILCS § 115/1 et seq. ("IWPCA"). (Doc. 1, ¶ 1), breach of contract, and unjust enrichment. (*Id.* at ¶¶ 1, 2). Plaintiff also seeks to certify a national class consisting of all similarly situated hourly employees who worked for Defendant at any time between May 10, 2021 and the final disposition of this matter, and who were not paid for all their hours worked or overtime wages. (*Id.* at ¶ 3).

Defendant moves to compel arbitration under the Federal Arbitration Act ("FAA") pursuant to an arbitration agreement ("Agreement") allegedly accepted by Plaintiff as part of the new hire process. (Docs. 23, ¶ 2; 24-1, ¶ 13)). In support of its Motion, Defendant submitted the Declaration of Michael Waddington, the director of human capital for FreedomRoads LLC, along with a copy of the Agreement. (Doc. 24-1).[1]

---

[1] Plaintiff asserts that the motion to compel should be denied because Defendant did not submit a copy of the alleged agreement to the Court. (Doc. 35, pg. 1). However, as noted in Defendant's reply, (Doc. 36, pgs. 1-2), a copy of the Agreement was submitted as an exhibit to the Declaration of Michael Waddington. (Doc. 24-1).

2

Defendant contends that because all of Plaintiff's claims are subject to arbitration, the Complaint should be dismissed under Rule 12(b)(3) due to improper venue. (Doc. 23, ¶ 7). In the alternative, Defendant requests the Court compel arbitration and stay the case pending completion of the arbitration. (*Id.* at ¶ 8.) Defendant claims Plaintiff may only arbitrate his claims on an individual basis because of the Agreement's class and collective action waiver. (*Id.* at ¶ 8). Alternatively, Defendant argues that Plaintiff's IWPCA claim should be dismissed under Rule 12(b)(6) because Plaintiff has not provided "an agreement to pay such wages" as required by the IWPCA. (*Id.* at ¶ 9).

In response, Plaintiff argues that the Agreement is unenforceable because it lacks mutuality. (Doc. 35, pg. 7-8). Specifically, Plaintiff claims "Defendant did not explain the documents to Plaintiff or tell him what they wanted him to sign, causing Plaintiff to sign the 'onboarding' documents under pressure to rush completing them without reading them." (*Id.* at 8). Plaintiff also claims he continued working for several weeks before completing the onboarding documents. (*Id.* at 3). Plaintiff alleges there was no "meeting of the minds to arbitrate as Plaintiff did not know what arbitration even was or that he signed an arbitration agreement." (*Id.* at 8).

Additionally, Plaintiff contends that the Agreement is procedurally and substantively unconscionable because Defendant did not explain the onboarding documents to Plaintiff or give him adequate time at work to read and complete them, such that Plaintiff did not realize he signed an arbitration agreement. (*Id.* at 9-10). Plaintiff adds that the Agreement is substantively unconscionable because Defendant created the

3

Agreement, did not give Plaintiff the choice to reject the Agreement, and claimed Plaintiff's continued employment constituted acceptance of the Agreement. (*Id.* at 10).

Defendant alleges that all new hires are given the opportunity to review onboarding documents before accepting them with an electronic signature. (*Id*).

Because the terms of an agreement more often govern its validity, and if valid, its scope and force, a review of the Agreement here is appropriate.

The Agreement requires arbitration for:

> [A]ll claims … including but not limited to claims for wages or other compensation due: claims for breach of contract or promise (express or implied) … claims for violation of any federal, state, local, or other governmental law, statute, regulation, or ordinance … including without limitation any law related to discrimination, terms, and conditions of employment or termination of employment.

(*Id.* at 6).

The Agreement goes on to state that the "arbitrator's decision shall be final and binding," and "that arbitration is a substitute for traditional litigation and [parties] hereby waive their respective rights to file a private lawsuit and have that suit heard in court by a judge or jury." (*Id.* at 7). The Agreement provides as well that the "Associate's waiver of his/her right to trial by jury and his/her agreement to submit all disputes, including without limitation those arising out of employment or termination of employment, to final and binding arbitration is done knowingly and voluntarily." (*Id*). Furthermore, the Agreement permits class or multi-party claims only upon written agreement by both parties, "unless the party or parties seeking to have class or multiple claims heard together can demonstrate to a court or arbitrator that class or multi-party

claims are the only effective way to halt and redress the alleged violations about which the party or parties complain." (*Id*).

## Discussion

A.  **Motion to Compel Arbitration Under the Federal Arbitration Act**

The parties do not dispute that the FAA governs the Agreement. The FAA mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and "places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Arbitration should be compelled under the FAA when "'three elements are present: (1) an enforceable written agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal to arbitrate.'" *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017)).

Courts are responsible for deciding whether an agreement to arbitrate exists before ordering arbitration. *Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010); *in accord K.F.C. v. Snap Inc.*, 29 F.4th at 837. In doing so, the Court turns to state contract law to determine whether a binding arbitration agreement exists. *Janiga*, 615 F.3d at 742; *Tinder*, 305 F.3d at 733 (citing 9 U.S.C. § 2); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

There are four elements of an enforceable contract under Illinois law: offer, acceptance, consideration, and mutual assent. *See Nat'l Prod. Workers Union Ins. Tr. v.*

*Cigna Corp.*, 665 F.3d 897, 901 (7th Cir. 2011). The parties do not dispute that Plaintiff signed the agreement, so the Court need not address the acceptance element. Similarly, the parties do not dispute whether the Agreement constituted an offer or provided consideration. [2] Rather, the thrust of Plaintiff's opposition to the motion is the question of "mutual assent." Illinois law requires courts to look to whether the contracting parties manifested an objective intent to be bound to the agreement through outward expressions, such as words or acts. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("[I]ntent to manifest assent in Illinois is revealed by 'outward expressions such as words and acts.'") (quoting *Bank Computer Network Corp. v. Cont'l Illinois Nat. Bank & Tr. Co. of Chicago*, 110 Ill. App. 3d 492 (1982)). Of course, signing or executing an agreement is the most common indicator of such intent. *Arbogast v. Chicago Cubs Baseball Club, LLC*, 194 N.E.3d 534, 543, 457 Ill.Dec. 45, 54, 2021 IL App (1st) 210526, ¶ 21 (Ill.App. 1 Dist., 2021) ("The most common way by which mutual assent can be shown is through a signature on a contract.")

While the FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet, courts in this Circuit analogize the standard to that required of a party opposing summary judgment under FED. R. CIV. P. 56(e), *i.e.*, the party opposing arbitration "must demonstrate that a genuine issue of material fact warranting a trial exists." *Tinder*, 305 F.3d at 735. Thus, "[j]ust as in summary

---

[2] In its opening paragraphs, the Agreement states that consideration for its terms is based on the employee being provided "an application for employment, or an offer of employment or continued employment, … and the compensation and job benefits that Associate has and/or will receive, … and the benefits of the speedy, impartial, and cost-effective dispute resolution procedure described below, and mutual promises made by Associate and [Defendant])."

judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.*; *see also Hopkins v. Dell Technologies, Inc.*, 2023 WL 3791722 at *5-6 (S.D. Ill. Jun. 2, 2023) (finding the plaintiff "failed to raise a genuine dispute of material fact as to the contract formation" and compelling arbitration because it was uncontested that the plaintiff received the agreement, even though she claimed to not have read it).

First, Plaintiff claims that under Defendant's pressure to complete his onboarding documents quickly, he signed the Agreement without first reading it, and thus there was no "meeting of the minds" to form an enforceable contract. (Doc. 35, pg. 3). However, Plaintiff provides nothing by way of a factual basis or description of the nature and extent of the "pressure" imparted upon him to sign the Agreement. He does allude to being required by Defendant to "complete all work assignments to diagnose and repair RVs while trying to finish the 'onboarding' documents before he signed them." (Doc. 35-1, ¶ 12.). However, Plaintiff admits "[i]t took several weeks for [him] to complete the 'onboarding' documents." (*Id.* at ¶ 14). Plaintiff points to no authority to suggest that an employer's requirement that certain employment documents be completed by the employee amount to such "pressure" or duress so as to prevent the formation of a contract.

"Duress," sufficient to prevent the creation of a contract, "is established by a showing that the circumstances left the complaining party bereft of the quality of mind essential to the making of a contract, such that he is unable to exercise his free will."

7

*Alexander v. Standard Oil Co.*, 368 N.E.2d 1010, 1016, 11 Ill.Dec. 402, 408, 53 Ill.App.3d 690, 699 (Ill.App. 1977) (citing *Slade v. Slade*, 310 Ill.App. 77, 33 N.E.2d 951; *Joyce v. Year Investments, Inc.*, 45 Ill.App.2d 310, 196 N.E.2d 24). Plaintiff provides no allegations that whatever "pressure" Defendant employed deprived him of his usual quality of mind or his ability to exercise free will.

Plaintiff also argues that there was no meeting of the minds because he did not read the Agreement and, given that he did not read the Agreement, he was unaware that it contained arbitration provisions. However, the mere fact that Plaintiff failed to read the Agreement, despite having the opportunity to do so, does not prevent the formation of the Agreement. *See Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome."); *Dorsey v. H.C.P. Sales, Inc.*, 46 F. Supp. 2d 804 (N.D. Ill. 1999) ("[A] party's failure to read a contract does not invalidate unread contractual terms or excuse that party's performance under the contract."). To make even a finer point on the failure of Plaintiff's argument, he admits he not only failed to read the Agreement in the first few weeks of his employment, but he did not read it until "years later." (Doc. 35, pg. 10). Protracted willful ignorance of or even being deliberately obtuse toward the terms of a document cannot serve as defense to its creation or enforcement. The Court is unconvinced by Plaintiff's argument that there was no "meeting of the minds" such that there was no contract formed when Plaintiff signed it.

Plaintiff then attempts to avoid the Agreement by arguing that it is both procedurally and substantively unconscionable. "Procedural unconscionability exists

8

when, after considering all of the circumstances, a court determines that disputed contract terms were "'so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware [he or she] was agreeing to [them]' and that the plaintiff lacked bargaining power." *Turner v. Concord Nursing and Rehabilitation Center, LLC,* 218 N.E.3d 456, 461, 467 Ill.Dec. 121, 126, 2023 IL App (1st) 221721, ¶ 20 (Ill.App. 1 Dist., 2023) (citing, *Razor v. Hyundai Motor America,* 222 Ill. 2d 75, 100, 305 Ill.Dec. 15, 854 N.E.2d 607 (2006)). "Substantive unconscionability applies where the contract terms are so one-sided that they oppress or unfairly surprise an innocent party and create an overall imbalance in the obligations and rights imposed by the bargain and a significant cost-price disparity." *Id.* (citing *Kinkel v. Cingular Wireless LLC,* 223 Ill. 2d 1, 28, 857 N.E.2d 250 (2006)). "A contract or clause may be declared unenforceable based on either procedural or substantive unconscionability or a combination of both." *Id.*

Plaintiff's argument that the Agreement is substantively unconscionable is bare bones. Plaintiff briefly suggests that Defendant did not give Plaintiff the choice to reject the arbitration provisions and, as such, Defendant benefited asymmetrically due to a disparity in bargaining power. (Doc. 35, pg. 10). The admission of Plaintiff that he was unaware of the arbitration provisions in the Agreement because he did not read the Agreement leaves little room for plausibility in the argument that that same agreement is substantively unconscionable because he was not given the choice to reject those provisions. Put simply, Plaintiff does not offer any rational factual basis to support a finding that the terms of the Agreement are so one-sided that they are oppressive or unfairly surprise an otherwise innocent party.

9

Plaintiff's argument that the Agreement is procedurally unconscionable does not fare better. Here, Plaintiff suggests that the Defendant's failure to explain the Agreement to him tends toward unconscionability. Plaintiff fails to point to any authority in this setting that would suggest the existence of duty on the part of the scrivener or author to explain to a contracting party the terms of the written document. Plaintiff also claims that the Defendant near the time of his hiring threatened to discipline him if the onboarding documents were not executed quickly. (Doc. 35, pg. 9). Its here that Plaintiff might have benefited from heeding the maxim: "As the courtship goes, so goes the marriage." Nevertheless, the arbitration provisions in the Agreement are prominently placed in the "Contents" section and reference the page where Plaintiff could have found his rights and obligations if he were to become involved in a dispute with Defendant. (Doc. 24-1, pg. 11). It appears that the substance of the Agreement is only 17 pages in length. The Agreement contains a section on the arbitration process, and it clearly directs a disgruntled employee to arbitration if other steps of the alternative dispute resolution should fail. Nothing contained in the Agreement is legalistic or difficult to read and understand. The Court cannot say that the Agreement's terms regarding arbitration are procedurally unconscionable.

The Court finds that Plaintiff has failed to raise a genuine issue of material fact sufficient to avoid the Agreement. Notwithstanding the enforceability of the Agreement, the Plaintiff asserts that the Class Action waiver contained in the Agreement is unconscionable.

B.     **Class Action Waiver**

Whether a party may proceed with class or collective arbitration is a question of arbitrability determined by the court on the basis of the parties' agreement. *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 506 (7th Cir. 2018); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964). Courts are "obliged to enforce the type of arbitration to which the[] parties agreed," including agreements which preclude arbitration on a class basis. *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003) (citing *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995)). Indeed, "the Supreme Court has emphasized that 'parties may specify *with whom* they choose to arbitrate their disputes.'" *Herrington*, 907 F.3d at 504 (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)).

"[A] waiver of the right to proceed in a class or collective arbitration is valid." *Herrington*, 907 F.3d at 506; *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 138 S. Ct. 1612, 200 L. Ed. 2d 889 (2018). The Supreme Court has established that there is "no entitlement to class proceedings for the vindication of statutory rights" under the Federal Rules of Civil Procedure. *Italian Colors*, 570 U.S. 234. In fact, "it is likely that such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an abridg[ment] or modif[ication] of a substantive right forbidden to the Rules." *Id.*; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351-352 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (reversing a finding that a class action waiver was unconscionable because "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations.")

11

First, Plaintiff argues that the class action waiver in the Agreement is unconscionable because it waives his statutory right to bring a collective action under the FLSA. (Doc. 35, pg. 13). Plaintiff suggests that even if the Agreement is otherwise enforceable, the Court may sever the class waiver provision as unconscionable. (*Id*); *see also Kinkel*, 223 Ill.2d at 45-47 (finding a class action provision unconscionable and severing it from the otherwise enforceable arbitration agreement). The FAA "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract,'" including unconscionability. *Id.* at 339 (citing 9 U.S.C. § 2). In *Kinkel,* the Illinois Supreme Court found that other state courts have upheld the validity of class action waivers, frequently relying on the principle of freedom of contract or the premise that a class action is merely a procedural device, which the parties may forgo. That Court also found that there possibly exists a pattern in case law suggesting that "a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." *Kinkel*, 223 Ill.2d at 40-41.

This Court has already rejected Plaintiff's argument that the Agreement was unconscionable as a whole because, in part, he fails to point to evidence that either the Agreement itself or the circumstances surrounding its execution renders it unconscionable. Similarly, Plaintiff provides no evidence that he was not free to reject the class action waiver. Quite to the contrary, had he read the Agreement as it pertains class

12

action waiver, he might well have been so offended as to reject those provisions or the Agreement as a whole.

Likewise, the Court does not find that the Agreement contained other features that would unreasonably limit the ability to obtain a remedy. The Arbitration Agreement provides that the associate must pay a $50 initiation fee, but the balance of any costs of the arbitration will be paid by RV World. (Doc. 24-1, pg. 19). In contrast, the unconscionable class waiver in *Kinkel* did not reveal the arbitration cost of $125 to the claimant, whose claim was only for $150. *Kinkel*, 223 Ill.2d at 29-30. There, the Court was concerned with the "cost-price disparity" that the plaintiff would face such that she would not be made whole. This Court does not share in those concerns in this case. The Plaintiff here does not offer any evidence that the relatively small cost of initiating arbitration would prevent him from being made whole. Accordingly, the Court turns to the question of whether the FLSA precludes the class action waiver in the Agreement.

While the Seventh Circuit has not specifically addressed waivers of class or collective actions in arbitration agreements under the FLSA, many circuits have concluded that the FLSA does not preclude such waivers. *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2013 WL 5433593 (N.D. Ill. Sept. 30, 2013) (referencing decisions from the Second, Third, Fifth, Eighth, and Ninth Circuits); *see also Herrington*, 907 F.3d at 504 (noting the district court found "many courts … have held that the Fair Labor Standards Act does not mandate the availability of collective action."); *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021) (explaining that "the [Supreme] Court has blessed th[e] arbitration maneuver" that "funnels participants away from class actions

13

many times" under various federal statutes such as the National Labor Relations Act in *Epic Systems*, 138 S. Ct. at 1632, the Sherman Act in *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-39, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013), the Credit Repair Organization Act in *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100, 132 S. Ct. 665, 181 L. Ed. 2d 586 (2012), and the Age Discrimination in Employment Act in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)). In *Gilmer*, the Supreme Court rejected a similar argument that the class action provision in the Age Discrimination in Employment Act ("ADEA") precluded waiver in an arbitration agreement because "the fact that the [ADEA] provides for the possibility of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Gilmer*, 500 U.S. at 32. The conclusion in *Gilmer* is relevant here because the class provision in the ADEA was expressly adopted from the same class provision in the FLSA. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (rejecting "[a]ppellant's claim that their inability to proceed collectively deprives them of substantive rights available under the FLSA"). Considering this weight of authority, the Court is unpersuaded by Plaintiff's argument that the FLSA precludes the Agreement's class action waiver.

Finally, Plaintiff claims that "an individualized action will not halt or redress the violations as it will not redress the damages accrued by RV techs throughout Illinois for the state law claims and throughout the country for the federal claims." (Doc. 35, pg. 14). Plaintiff seems to be referencing the exception to the class action waiver in the Agreement when a party "can demonstrate to a court or arbitrator that class or multi-party claims

14

are the only effective way to halt and redress the alleged violations about which the party or parties complain." (Doc. 24-1, pg. 7). Once again, Plaintiff's argument is bare bones. Plaintiff fails to cite any factual or legal basis that a class action is "the only effective way to halt or redress the alleged violations" such that the Agreement's waiver exception applies. It is not apparent why Plaintiff's class action is the only effective way to address these alleged violations. *See Concepcion,* 563 U.S. at 352 (rejecting the argument that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system."). Accordingly, the Agreement mandates that Plaintiff may proceed to individualized arbitration of his claims, and that he waived his right to bring a class action. The Court now considers whether, after compelling arbitration, it is appropriate to stay or dismiss this case.

C.      **Rule 12(b)(3) Motion to Dismiss**

In the Seventh Circuit, motions to dismiss and compel arbitration are properly brought under Rule 12(b)(3) of the Federal Rules of Civil Procedure because "[a]n agreement to arbitrate is a type of forum selection clause." *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985); accord *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801 (7th Cir. 2011) ("[W]e have held that a motion to dismiss based on a contractual arbitration clause is appropriately 'conceptualized as an objection to venue, and hence properly raised under Rule 12(b)(3).'"). Courts are permitted to consider evidence outside of the pleadings when determining a motion to dismiss for improper venue. *Faulkenberg*, 637 F.3d at 809-10. Because courts "rigorously enforce" an arbitration agreement

15

according to the agreement's terms, *Jackson*, 764 F.3d 773-74, it is appropriate for the Court to consider the terms of the Agreement in the context of deciding the Rule 12(b)(3) motion. *Faulkenberg*, 637 F.3d at 810.

The FAA requires that courts, after referring a case to arbitration pursuant to a valid agreement, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Although the FAA does not explicitly provide that a case subject to arbitration can be dismissed, "[t]here is a growing trend among courts favoring dismissal of a case when all of the claims contained therein are subject to arbitration." *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013), aff'd, 556 F. App'x 543 (7th Cir. 2014) (finding dismissal appropriate because Plaintiff's claims were covered by the broad provisions in the arbitration agreement, so that retaining jurisdiction and staying the action "would only serve to waste judicial resources."). Indeed, "the 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Concepcion*, 563 U.S. at 344.

Here, the Agreement specifically contemplates the waiver of judicial resolution and, instead arbitration, of exactly the types of claims brought by Plaintiff. Plaintiff's FLSA, IMWL, IWPCA, breach of contract and unjust enrichment claims fall within the covered claims listed in on the first page of the Agreement in the second paragraph. (Doc. 24-1, pg. 6). Moreover, the Agreement provides again that it covers all claims "arising out of employment." (*Id.* at 7). The parties do not dispute that Plaintiff's claims arise out of

his employment with Defendant. Plaintiff, for his part, does not address whether his claims are covered by the terms of the Agreement.

Accordingly, the Court finds it appropriate to dismiss this case in its entirety for improper venue.

**D.     Rule 12(b)(6) Motion to Dismiss**

It is "the court's duty to determine whether the parties' grievance belongs in arbitration, not rule on the potential merits of the underlying dispute between the parties." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 581 (7th Cir. 2006). As the Court found that arbitration is the proper venue for Plaintiff's claims, it does not decide Defendant's Rule 12(b)(6) Motion.

## Conclusion

For these reasons, Defendant's Motion to Dismiss Complaint, or in the Alternative, to Compel Arbitration and Stay Proceedings (Doc. 23) is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion to Compel Arbitration is **GRANTED**; Plaintiff is hereby **COMPELLED** to arbitrate his entire dispute pursuant to the parties' Arbitration Agreement. Defendant's Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6) is **DENIED** as **MOOT**. Defendant's Motion to Stay Proceedings is **DENIED**. This action is **DISMISSED** without prejudice and the Clerk is **DIRECTED** to Close the case.

**SO ORDERED.**

Dated: March 29, 2024                                    /s *David W. Dugan*
                                                                     _____
                                                                     DAVID W. DUGAN
                                                                     United States District Judge